UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRET D. GALLAGHER,<br><br>Petitioner,<br><br>v.<br><br>DAVID DAVEY,<br><br>Respondent. | No. 1:16-cv-01177-AWI-SKO HC<br><br>**FINDINGS AND RECOMMENDATION THAT THE COURT DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(Doc. 1)** |

Petitioner, Bret D. Gallagher, is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raises two grounds for habeas relief: (1) ineffective assistance of counsel; and (2) violation of his rights pursuant to the Confrontation Clause. The Court referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Having reviewed the record and applicable law, the undersigned recommends that the Court deny habeas relief.

## I. Procedural and Factual Background[1]

On January 17, 2011, Steven Galante ("Galante"), a coworker, Christina Gallagher ("Christina"),[2] and Christina's friend Rosie, drove to Rosie's house in Hanford, California. When Galante arrived, there were three women and eight men hanging out at the house, including Trenton Oshea Davis ("Davis"), Kebrocee Aaron Maxwell ("Maxwell"), and Petitioner.

After spending 90 minutes at the house, Galante, Christina, Maxwell, and another person drove to a nearby store. As they were leaving the store, Jimmy Dave Serna ("Serna") was standing outside. Serna got into the car and Christina introduced him to Galante. The group returned to the party.

At the party, Galante told Maxwell that he had been to prison for possession and sale of drugs and that he was a Northerner or Norteno.[3] Galante had dropped out of the gang while in prison, but did not admit this to Maxwell. Maxwell told Galante he was a Crip, but Galante was not concerned because Northerners and Crips usually got along in prison.

Sometime later, Christina decided to leave the party to go to the store with two other women from the party. Christina wanted Galante to go with them as she was concerned with his safety with Serna at the house. Christina did not trust Serna based on her previous interactions with him, but Galante chose to stay at the house.

Soon after leaving the house, Christina called Galante to tell him Rosie had been arrested for driving under the influence of alcohol and she needed a ride. Galante told Petitioner that Christina needed a ride. When Galante approached Petitioner, Petitioner had been in a room with Maxwell, Davis, Serna, and an individual named Chase discussing a Crips meeting.

---

[1] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Gallagher* (Cal. Ct. App. Jan. 17, 2014) (No. F064407), is presumed to be correct. 28 U.S.C. § 2254(e)(1).
[2] Christina is referred to by her first name to avoid any confusion with Petitioner.
[3] A Northerner or Norteno refers to a member of a gang.

2

Galante believed he and Petitioner were going to pick up Christina, but when they walked out of the house, Serna, Maxwell, Davis, and Chase came along. Maxwell asked Galante where he was from; Galante responded "Tulare County." Someone hit Galante on the back of the head and he fell to the ground. Maxwell, Serna, Davis, Chase, and Petitioner repeatedly kicked and hit Galante while yelling "Home Garden Crip." Galante also heard someone say, "this is a Crip thing."

The five men beating Galante threatened to kill him if he made any noise. They took Christina's car keys from Galante, walked him to the car, and pushed him into the trunk. At some point during the attack, Galante's cell phone and wallet were taken. The trunk was closed and the men drove away with Galante in the trunk and he lost consciousness.

The car stopped and the trunk was opened. Galante was warned to be quiet or he would be killed. Two of the men pulled Galante out of the trunk and he fell to the ground. The men began beating Galante again, hitting him "a dozen, two dozen times." Galante saw each of the men hit him a couple of times during the assault.

Eventually, the men left Galante at on the side of the road. After the assault, Galante stumbled to a house and asked for help.

Kings County Sheriff's Deputy Nathan Ferrier interviewed Galante at the hospital emergency room. Galante stated all five men from the house attacked him. The interview was short because Galante passed out. Galante had a gash under his eye that required multiple stitches, multiple abrasions, and bruising to his back and shoulders.

Detective David Dodd ("Detective Dodd") drove to the location where Galante was left on the side of the road. Detective Dodd saw two puddles of blood on the road that were consistent with Galante being beaten at the location. A short distance from the puddles of blood were the words "gangsta Crip," and a house nearby had gang writing on it.

3

Detective Dodd interviewed Galante after he was released from the hospital. Galante had primarily interacted with Maxwell at the party and was easily able to identify him as one of the attackers. Galante also identified Petitioner, Davis, Serna, and Chase from photo lineups.

On October 4, 2011, an information was filed charging Petitioner, Davis, Serna, and Maxwell with kidnapping (Cal. Penal Code § 207(a)), second degree robbery (Cal. Penal Code § 211), and assault by means likely to produce great bodily injury (Cal. Penal Code § 245(a)(1)). It was also alleged that the men personally inflicted great bodily injury and committed the offenses for the benefit of a criminal street gang.

The parties stipulated that Kings County Sheriff's Deputy Andrew Meyer ("Deputy Meyer") was an expert in Kings County street gangs. Deputy Meyer explained that Northerners and Crips were rival gangs in Kings County. Crips would try to assault Northerners who came into their territory and it would be common for the gang members to call out the name of the gang during an assault. Deputy Meyer opined that Petitioner, Davis, Serna, and Maxwell were members of the Crips gang.

The jury found the men guilty on the three charges and found all enhancements true. The trial court imposed an aggregate term of 23 years' imprisonment on Petitioner.

On January 17, 2014, the Court of Appeal for the Fifth Appellate District affirmed Petitioner's conviction, but remanded the case to the trial court to correct an error concerning the application of the gang enhancement and for resentencing. *People v. Gallagher*, (Cal. Ct. App. Jan. 17, 2014) (No. F064407), at 39.

On November 10, 2014, the trial court sentenced Petitioner to an aggregate term of 29 years and 8 months. Petitioner appealed the increased sentence, which the Court of Appeal affirmed. *People v. Gallagher*, 2016 WL 1301348 (Cal. App. April 4, 2016). The California Supreme Court denied review. On February 10, 2016, Petitioner filed a petition for writ of habeas corpus with the

California Supreme Court, which denied the petition.

On July 13, 2016, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc. 1.) On October 6, 2016, Respondent moved to dismiss the petition alleging Petitioner's two claims were not presented to the state court, and consequently, were unexhausted. (Doc. 18.) The Court denied the motion to dismiss, finding the claims were presented to the California Supreme Court, and as such, were exhausted. (Doc. 20.)

On January 24, 2017, Respondent filed an answer to the petition. Petitioner did not file a reply.

## II. **Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination

6

was unreasonable. *Harrington*, 562 U.S. at 102.

### III. The State Court Did Not Err in Denying Petitioner's Ineffective Assistance of Counsel Claims.

In his first claim for habeas relief, Petitioner contends defense counsel provided ineffective assistance by failing to investigate Galante's statements to Detective Dodd. (Doc. 1 at 5.)

In its Order denying Respondent's motion to dismiss, the Court determined Petitioner had presented this claim to the California Supreme Court. (Doc. 20 at 3.) Despite this finding, Respondent again failed to address the claim in its answer, instead choosing to assert once again that the claim was not exhausted. (Doc. 22 at 7.) Respondent failed to obey the Court's order to address the merits of Petitioner's petition. (*See* Doc. 21.) The Court reminds Respondent that the Rules Governing Section 2254 cases requires a Respondent to address all allegations in the petition. Rule 5(b) ("The answer must address the allegations in the petition.")

Nevertheless, Petitioner has the burden of showing by a preponderance of the evidence that he merits habeas relief. *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citing *Snook v. Wood*, 89 F.3d 605, 609 (9th Cir. 1996); *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994)). Consequently, the Court will address Petitioner's claim of ineffective assistance of counsel to determine whether Petitioner has established entitlement to relief as a matter of law.

#### A. Standard of Review for Ineffective Assistance of Counsel Claims

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland* test requires Petitioner to establish two elements: (1) his attorneys' representation was deficient and (2) prejudice to Petitioner. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

### B. State Court of Appeal Opinion

Before the California Court of Appeal, Petitioner's co-defendant, Serna, argued defense counsel provided ineffective assistance by failing to move to suppress Galante's identification, because the identification was based on an unduly suggestive procedure. *Gallagher*, (No. F064407), at 7, 28. Petitioner joined Serna's ineffective assistance of counsel argument.

The Court of Appeal described the interaction between Galante and Detective Dodd as follows:

> [Detective] Dodd spoke with Galante after Galante was released from the hospital. When [Detective] Dodd met with Galante, the detective showed him a "six-pack" photo lineup[4] to determine if Galante could identify his attackers. Prior to showing Galante any photos, [Detective] Dodd admonished him with standard language read to all witnesses before they were asked to view a photo lineup and had Galante sign the admonishments. The admonishment read:

---

[4] The photo lineup shown to Galante was made up of

> [p]hotographs the sheriff's department believes to be suspects . . ., and a California Department of Justice computer program then selects photographs of five other people who are similar to the suspect's photo in terms of gender, age, race, and physical characteristics. The photos are then positioned on a piece of paper as a "six-pace photo lineup."

*Gallagher*, (No. F064407), at 28-29.

8

> You will be asked to look at a group of photographs. The fact that the photographs are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain the picture of the person who committed the crime. You are not obligated to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties. Please do not discuss the case with other witnesses nor indicate in any way that you have identified someone.

*Id*. at 28. When shown the six-pack lineup with Petitioner, Galante picked out Petitioner without "hesitation or doubt." *Id*. at 29.

The Court of Appeal found that Serna's counsel was not ineffective because "the identification procedure was not unduly suggestive; he has failed to demonstrate any prejudice; and the record reflects defense counsel made a tactical decision to challenge the pretrial identification of Serna by cross-examination of [Detective] Dodd and Galante." *Id*. at 30.

The Court of Appeal noted

> "A pretrial identification procedure violates a defendant's due process rights if it is so impermissibly suggestive that it creates a substantial likelihood of irreparable misidentification. The defendant bears the burden of proving unfairness as a 'demonstrable reality,' not just speculation. [ ]" (*People v. Contreras* (1993) 17 Cal.App.4th 813, 819 (*Contreras*); see *People v. DeSantis* (1992) 2 Cal.4th 1198, 1222.)
>
> . . .
>
> [ ] Serna cannot show prejudice from failing to move to exclude the pretrial identification of him because Galante positively identified Serna at trial as one of the perpetrators of the attack. In addition, Christina testified that Serna was one of those at the house when she left to go to the store and the attack on Galante took place immediately thereafter.
>
> Finally, defense counsel cross-examined both [Detective] Dodd and Galante and pointedly suggested the pretrial identification of Serna was suspect. That Serna, and *apparently Petitioner* and Maxwell, now wish to second-guess defense counsel's decision not to challenge the pretrial identification, but instead to attack its credibility in cross-examination, does not constitute a basis for finding ineffective assistance of counsel. "'"[W]e accord great deference to counsel's tactical decisions" [ ], and . . . "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [ ].'" (*Jones*, *supra*, 29 Cal.4th at p. 1254; accord, *Weaver*, *supra*, 26 Cal.4th at p. 928 ["'even "debatable/trial tactics" do not "constitute a deprivation of the effective assistance of counsel"'"].)

9

*Id*. at 30-32 (emphasis added).

### C. The State Court Did Not Err in Rejecting Petitioner's Ineffective Assistance of Counsel Claims.

Petitioner alleges a "[Sixth] Amendment violation," because there was "no investigation [of Galante's] hospital testimonial statements[, which] were not spontaneous." (Doc. 1 at 5.) Further, Petitioner alleges Galante "gave testimonial statement[s] at [the] hospital," which "were not spontaneous statements from the scene of the crime." *Id*. Based on these statements, it appears Petitioner is arguing that defense counsel was ineffective for failing to challenge the admission of Galante's statements and pretrial identification.

A pretrial identification procedure violates due process when it is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Whether a procedure is impermissibly or unduly suggestive depends upon the totality of the circumstances. *See Stovall v. Denno*, 388 U.S. 293, 302 (1967), *abrogated by Harper v. Virginia Dep't. of Taxation*, 509 U.S. 86 (1993).

Here, Petitioner joined Serna's argument that the trial court should not have admitted Galante's identification of Serna. However, Petitioner does not explain how Galante's identification of Serna violated Petitioner's due process rights. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (citing *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970)). Petitioner has the burden to establish both that his attorneys' representation was deficient and the deficiency caused Petitioner prejudice. Because Petitioner does not explain how counsel's representation was deficient or how the deficient representation prejudiced him, the Court recommends dismissing his claim for ineffective assistance of counsel.

## IV. The State Court Did Not Err in Denying Petitioner's Confrontation Clause Claim.

In his second ground for habeas relief, Petitioner alleges the trial court allowed the jury to hear Galante's testimonial evidence, which violated Petitioner's right to confront witnesses. (Doc. 1 at 5.) Respondent counters the state court's rejection of Petitioner's Sixth Amendment claim[5] was reasonable, because Galante testified at trial and was subject to cross-examination. (Doc. 22 at 9-10.)

### A. Standard of Review for Confrontation Clause Claims

The Sixth Amendment to the United States Constitution grants a criminal defendant the right "to be confronted with the witnesses against him." The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). "The 'main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*.'" *Fenenbock v. Dir. Of Corrs. for California*, 692 F.3d 910, 919 (9th Cir. 2012) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)) (emphasis in original). "Cross-examination is the principal means by which the believability of the witness and the truth of his testimony are tested." *Fenenbock*, 692 F.3d at 919 (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)) (internal quotation marks omitted).

The Supreme Court has held that the Confrontation Clause bars the prosecution's introduction of a witness's out-of-court statements that are "testimonial" unless the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. at 68-69 (2004). To determine whether a contested statement by an out-of-court declarant violates the

---

[5] Petitioner alleges Respondent violated his Fifth Amendment right to confront witnesses; however, it is clear Petitioner is alleging Respondent violated his Sixth Amendment right to confront witnesses. The Fifth Amendment provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. X.

Confrontation Clause, a court must first determine whether the contested statement constitutes testimonial hearsay. *Id*. If the court finds that the contested statement was testimonial, it must consider whether the declarant was unavailable and whether the defendant had a prior opportunity to cross-examine the declarant. *Id*.

### B. The State Court Did Not Err in Rejecting Petitioner's Confrontation Clause Claim.

In his petition for writ of habeas corpus filed with the California Supreme Court, Petitioner alleged that the trial court's admission of Galante's statements to Detective Dodd violated Petitioner's rights under the Confrontation Clause. (Lodged Doc. 2 at 7, 15, 20.) The petition was summarily denied. *Id*. at 1.

Because petitioner raised this issue in his state habeas petition, which was summarily denied, there is no reasoned state court opinion for the Court to review. Consequently, this Court must "perform an independent review of the record to ascertain whether the state court decision is objectively unreasonable." *Haney v. Adams*, 641 F.3d 1168, 1171 (9th Cir. 2011) (internal citations omitted).

Petitioner claims Galante's statements to Detective Dodd were testimonial, and therefore, should not have been admitted. "Although *Crawford* did not define 'testimonial' or 'nontestimonial,' it made clear that the Confrontation Clause was concerned with 'testimony,' which 'is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Delgadillo v. Woodford*, 527 F.3d 919, 927 (9th Cir. 2008) (quoting *Crawford*, 541 U.S. at 51). *Crawford* "noted that '[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.'" *Id*. Subsequent Supreme Court cases have suggested that a statement is "testimonial" if its declarant knew, or should have known, that its primary utility was to provide evidence of the defendant's unlawful conduct for use in his prosecution or a criminal investigation

12

into past events. *Williams v. Illinois*, 132 S. Ct. 2221, 2242 (2012) ("The abuses that the Court has identified as prompting the adoption of the Confrontation Clause shared the following two characteristics: (1) they involved out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct and (b) they involved formalized statements such as affidavits, depositions, prior testimony, or confessions.")

Here, Galante's statement to Detective Dodd was testimonial as it was a formal statement made to a police officer in which he knew, or should have known, that its primary utility was to provide evidence of Petitioner's unlawful conduct. Respondent does not dispute that the statement was testimonial.

However, "[w]hen a witness appears for cross-examination at trial, the Confrontation Clause places no restraint on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59, n.9; *see also United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005) ("[A]lthough [defendant's] statement to [police] was 'testimonial' under *Crawford*, . . . because [defendant] was available as a witness and cross-examined . . ., the admission of [defendant's] out-of-court statement did not violate [defendant's] Sixth Amendment rights under *Crawford*.") Galante testified as a witness in the case against Petitioner and was subject to cross-examination; therefore, the Confrontation Clause was not violated. *California v. Green*, 399 U.S. 149, 158 (1970) ("[T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.") Because the admission of Galante's statement did not violate the Confrontation Clause, the Court recommends denying Petitioner's claim.

## V. **Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*,

13

537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.

Accordingly, the Court recommends declining to issue a certificate of appealability.

### VI. Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that the Court dismiss the petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 3, 2018**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE